**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

VICTOR PERINI, JR.,

        Plaintiff,

v.                                                                      No. CIV 05-138 LFG

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Victor Perini, Jr. ("Perini") invokes this Court's jurisdiction under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner determined that Perini was not eligible for disability insurance benefits ("DIB"). Perini moves this Court for an order reversing the Commissioner's final decision and awarding him payment of benefits or remanding for a rehearing. [Doc. No. 11.]

### <u>Background</u>

Perini was born on January 5, 1947, is married and has two children, ages 13 and 24. [RP at 45, 307, 314.] He was 56 years old when the administrative hearing was held. [RP at 16, 314.] Perini completed the ninth grade of high school and did not attain his G.E.D. [RP at 314.] Perini was employed in a number of different jobs but appears to be a poor historian with respect to those jobs and dates of employment. [*See* discussion *infra*.] The Administrative Law Judge ("ALJ") determined

1

that Perini had past relevant work experience as a bus inspector, a bread salesperson and a carpenter/contractor.  [RP at 19.]

Perini alleges an onset date of disability of July 5, 1994, due to blindness in his right eye, no use of his right arm and shoulder, limited use of his left arm and hypertension.  [RP at 16, 45.]  Perini probably intended his onset date of disability to be July 5, <u>1993</u>, at about the time he was involved in a pedestrian-car accident.  [RP at 128, 150-54.]

On February 15, 2002, Perini signed his application for DIB.  [RP at 45.]  For some reason, his application for Social Security Income benefits ("SSI") is not part of the administrative record, although the ALJ noted he filed applications for both SSI and DIB on January 25, 2002.  [RP at 15.]  In his application for DIB, Perini stated that he did not earn much in 1984 and 1988, had a good year in 1990, did not make much money in 1993-1999, and tried working "a bit" in 2000.  [RP at 47.]  It is not clear from the administrative record how accurate those statements were.

ALJ David Wurm held an administrative hearing on April 28, 2003 in Roswell, New Mexico, at which Perini was represented by counsel.  [RP at 312.]  In a decision, dated June 20, 2003, Judge Wurm found that Perini was not eligible for DIB or SSI.  The ALJ determined at step four of the sequential evaluation process that Perini's residual functional capacity ("RFC") did not prevent him from returning to his past relevant work as a bread salesman as that position is generally performed in the national economy.  [RP at 18-19.]

On August 20, 2003, Perini requested a review of the hearing decision, stating that his tax papers were incomplete, the "doctor did not recognize cysts," and he could not stand or sit very long at a time.  [RP at 11.]  The Appeals Council received and considered additional evidence in the form of Perini's wife's affidavit, dated March 4, 2004.  [RP at 6.]  On December 10, 2004, the Appeals

Council denied Perini's request for review (as to the DIB application).  [RP at 7.]  However, on that same date (12/10/04), the Appeals Council wrote a letter to Perini stating that the council granted his request for review of the ALJ's June 20, 2003 decision "under the new and material evidence provision" of SSA regulations.[1]  The December 10th notice, however, addressed only Perini's claim for SSI benefits and further explained that a different action was taken regarding Perini's application for DIB.

In the December 10th Notice, the Appeals Council determined that Perini was disabled as of January 25, 2002.  [Doc. No. 12, Ex. A.]  In so finding, it explained that Perini filed a subsequent claim on August 11, 2002, in which he was found to be under a disability based on pilonidal cysts. Perini's case was reviewed by Dr. Bocian of the Disability Determination Services who stated that status post-pilonidal cyst surgery (actually three unsuccessful operations for chronic right groin and substantial infection), Perini continued to have chronic lymphatic infections with serous pustular drainage requiring several baths a day for control.  Dr. Bocian found that this problem had persisted for "many years" with several drainage ports and multiple sinus tracts that were not responsive to antibiotics or surgery.  Dr. Bocian concluded that Perini's impairment was medically equal to listing 8.06.

Thus, the Appeals Council re-opened Perini's SSI application, dated January 25, 2002, and found him disabled as of that date.  The Appeals Council further found that before January 25, 2002,

---

[1]The December 10, 2004 Notice to Perini regarding his application for SSI benefits was not made part of the administrative record, and instead, was attached as an exhibit to Plaintiff's opening brief in this case. Defendant explained in its response brief that because of the Administration's decision regarding SSI benefits, it was addressing only Perini's January 25, 2002 application for DIB, which was denied.

Perini retained the RFC to perform light work that did not prevent him from performing his past relevant work as a bread salesman.

Perini's appeal of the denial of his request for review of the DIB denial followed.

## Standards for Determining Disability

In determining disability, the Commissioner applies a five-step sequential evaluation process.[2] The burden rests upon the claimant to prove disability throughout the first four steps of this process, and if the claimant is successful in sustaining his burden at each step, the burden then shifts to the Commissioner at step five.  If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[3]

Briefly, the steps are: at step one, claimant must prove he is not currently engaged in substantial gainful activity;[4] at step two, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . .,"[5] at step three, the Commissioner must conclude the claimant is disabled if he proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[6] and, at step four, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[7]  If the claimant is successful at all four of the

---

[2]20 C.F.R. § 404.1520(a)-(f) (1999); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

[3]20 C.F.R. § 404.1520(a)-(f) (1999); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[4]20 C.F.R. § 404.1520(b) (1999).

[5]20 C.F.R. § 404.1520(c) (1999).

[6]20 C.F.R. § 404.1520(d) (1999).  If a claimant's impairment meets certain criteria, that means his impairment is "severe enough to prevent him from doing any gainful activity."  20 C.F.R. § 416.925 (1999).

[7]20 C.F.R. § 404.1520(e) (1999).

preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's RFC,[8] age, education and past work experience, he is capable of performing other work.[9] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove he cannot, in fact, perform that work.[10]

### Standard of Review and Allegations of Error

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). The Court's review of the Commissioner's determination is limited. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1497 (10th Cir. 1992). The Court's function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. Id. at 1497-98. In Clifton v. Chater, the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting

---

[8] One's RFC is "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy. Those categories are: sedentary, light, medium, heavy and very heavy. 20 C.F.R. § 405.1567 (1999).

[9] 20 C.F.R. § 404.1520(f) (1999).

[10] Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

> his decision, the ALJ must discuss the uncontroverted evidence he
> chooses not to rely upon, as well as the significantly probative
> evidence he rejects.

Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (internal citations omitted).  If

supported by substantial evidence, the decision of the Commissioner is conclusive and must be

affirmed.  The Court cannot re-weigh the evidence or substitute its judgment for that of the

Commissioner.  Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

After reviewing Perini's medical records, the ALJ concluded that Perini was not entitled to

DIB benefits at step four of the sequential process.  In reaching this decision, Judge Wurm made the

following findings: (1) Perini had not engaged in substantial gainful activity since December 31, 2001

(rather than Perini's proposed onset date of 7/5/94); (2) Perini's biceps tendinitis, generalized

weakness of the right upper extremity, degenerative joint disease of the left knee, almost blindness

in one eye and controlled hypertension were severe impairments but not severe enough to meet or

equal a Listing; (3) Perini's allegations of his limitations were not totally credible; (4) the ALJ

carefully considered all of the medical opinions in the record regarding the severity of Perini's

impairments;  (5) Perini had the RFC of someone who could stand or walk 6 hours a day with normal

breaks, could sit for 2 hours out of an 8 hour day, could lift 10 pounds frequently and 20 pounds

occasionally, was limited to kneeling, crouching, squatting and crawling only occasionally, was

limited to gripping and handling with his right dominant upper extremity only occasionally, and

needed to avoid heat and occupations that required depth perception; (6) Perini's RFC did not

prevent him from performing his past relevant work as a bread salesman; (7) Perini's medically

determinable impairments did not prevent him from performing his past relevant work; and (8) he was

not under a disability as defined in the SSA, at any time through the date of the ALJ's decision. [RP at 17-20.]

In this appeal, Perini sets forth three grounds to support reversal and remand for payment or benefits, or alternatively, remand for a rehearing: (1) the ALJ's finding that Perini was engaged in substantial gainful activity in 2001 was not supported by substantial evidence; (2) the finding that Perini was able to return to his past relevant work as a bread salesman was contrary to the evidence and the law; and (3) the ALJ's credibility finding was contrary to law. [Doc. No. 12, p. 3.] The Commissioner argues that the ALJ's decision (regarding DIB benefits) should be affirmed because substantial evidence supports the decision and because the determination was consistent with regulatory criteria and in accordance with relevant case law. [Doc. No. 13, p. 13-14.]

**Discussion**

It is important to understand Perini's work history with respect to two of the three challenges Perini makes to the ALJ's findings: 1) the ALJ's finding that Perini had substantial gainful activity during 2001 and therefore, would be eligible for disability no earlier than January 1, 2002; [RP at 17]; and, 2) the ALJ's finding that Perini had past relevant work as a bread salesman. [RP at 18-19.]

**A.      Substantial Gainful Activity**

With respect to the first issue, the ALJ linked his finding to the first page of Perini's 2001 tax return that showed a net business profit of $14,818.83. The ALJ concluded that this profit was clear indication that Perini had engaged in substantial gainful activity in 2001. [RP at 17.] As part of the briefing of Plaintiff's motion to reverse, Perini attached to his reply a portion of a computer-generated page of a "revised" 2001 tax return that shows business income of $119.00 instead of $14,818.83. This document was not before the ALJ or the Appeals Council; moreover, Perini provides no date,

substantiation or explanation for the "revision."  Instead, Perini argues that the ALJ should have been convinced by his testimony at the hearing, wherein Perini stated that while he intended to do all of the work himself on the 2001 projects, he was physically unable to do it and thus had to contract out the work.  As a result, he lost money in the end because he had to pay others to do the work he could not perform.  [RP at 321.]

When asked by the ALJ (in April 2003) about filing tax returns for his business, Perini admitted that he was "guilty of not filing one for 2001," but stated his wife was working on getting it filled out.  [RP at 337.]  At the end of the hearing, the ALJ told Mr. Perini that he would like to see Perini's tax returns before making a decision about his prior work so as to determine when Perini's disability might have started.  Perini responded that he did not have his tax returns with him but that he would do his best to get them to the ALJ.  The ALJ explained that Perini could also provide other records he had that might show his income, "being you had employees, paying Social Security tax and so forth . . . ."  [RP at 347.]  The ALJ left the record open for several weeks to receive and review the requested records.

In a letter dated May 12, 2003, Perini's attorney indicated that he was providing tax returns for 1995, 1996, 1999, 2000, 2001 and 2002.  The 2001 tax return that was attached showed a business income of $14,818.83 and wages in the amount of $16,978.97.  [RP at 67.]  It is not clear when the revised 2001 tax return was filed, but the faxed copy of Exhibit A to Perini's reply seems to indicate November 17, 2003 was the date of the revision.  Thus, it appears that the revision was submitted to the IRS subsequent to the ALJ hearing and after the ALJ was provided with the original 2001 tax return.

If an individual is working and the work is considered substantial gainful activity, the individual will not be found disabled regardless of medical condition. 20 C.F.R. § 404.1520(b). An individual's earnings may show he engaged in substantial gainful activity. Indeed, substantial gainful activity is presumed when earnings reach a certain level. Franco v. Chater, 1996 WL 559641 at *1-2 (10th Cir. Oct. 2, 1996); Peterson v. Sullivan, 1991 WL 325493 at *1 (D. Utah Nov. 5, 1991) (*relying on* Hedge v. Richardson, 458 F.2d 1065 (10th Cir. 1972)).

In evaluating an applicant's work activity for purposes of substantial gainful activity purposes, the primary consideration will be the earnings derived from that work. 20 C.F.R. § 404.1574(a)(1). "Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and eighty dollars per months for years after January 1, 2001." Harris v. Barnhart, 2004 WL 1899984 at *7 (N.D. Ill. Aug. 17, 2004) (citing 20 C.F.R. § 1574(b)(2) Table 1, as modified by 65 F.R. 82905, Dec. 29, 2000)).

The information before the ALJ (and the Appeals Council) included business earnings in excess of the $780/month sum that typically demonstrates substantial gainful activity. The presumption of having engaged in substantial gainful activity under these circumstances may be rebutted where the applicant demonstrates that he experienced significant absenteeism, rendered substandard job performance, required help from co-workers to accomplish the work, could work for only brief time periods and/or needed special accommodation. Solenberger v. Apfel, 1999 WL 319081 at *5 (D. Kan. Feb. 17, 1999) (*relying in part on* Katz v. Sec'y of HHS, 972 F.2d 290, 292-94 (9th Cir. 1992)).

The Court concludes that substantial evidence supports the ALJ's determination that Perini engaged in substantial gainful activity in 2001 and that the ALJ committed no error in so finding. The

evidence consists primarily of the 2001 (unrevised) tax information that was submitted to the ALJ, along with Perini's testimony that he worked as a contractor in 2001 and held or renewed his contractor's license until or through 2002.  Although given the opportunity to do so, Perini failed to supply any evidence to the ALJ documenting reductions or losses to his business income in 2001.  Perini's unsubstantiated testimony, without more, is insufficient to rebut the presumption in this case that he engaged in substantial gainful activity through 2001.

Moreover, the Court rejects Plaintiff's argument that Judge Wurm erroneously failed to consider Perini's testimony at the hearing.  Indeed, the ALJ discussed Perini's testimony regarding the specific work he engaged in during 2001.  [RP at 17.]  However, clearly, Perini was unable to rebut the presumption of substantial gainful activity in 2001.  First, he had not even filed his 2001 tax returns before the hearing, and when he did, he did not show any business losses contrary to his hearing testimony.  The belated revision of his tax return, to the extent that it was substantiated, was neither before the ALJ nor the Appeals Council.

**B.**      **Past Relevant Work**

As stated previously, it is difficult to get a clear understanding of Perini's exact work history, although the Court examined both Perini's recitations of that history in disability application forms and his doctors' notations of Perini's employment in some medical records.  The earliest medical records begin in 1993.  Several medical records indicate that in July and August 1993, Perini was unemployed.  [RP at 128, 145.]  A chiropractor's summary of treatment for 1993-1994 indicates that Perini's schedule was too busy to keep his appointments.  [RP at 131.]  On March 8, 1994, Perini's chiropractor wrote Perini's personal injury attorney stating that Perini's employment depended then on his manual skills.  [RP at 134.]

10

There is a gap in medical records between 1995 until late 1998, when another medical record indicates that Perini had been working in Albuquerque.  [RP at 232.]  There are no medical records after late 1998 until early 2000.  As of January 2000, Perini worked as a contractor and ran his own business.  [RP at 175, 201, 205.]

After February 2000, there are no medical records until late 2001.  A September 2001 medical record describes Perini as being "self employed."  [RP at 156.]

Perini filed his DIB application in early 2002, stating that he had stopped working as of July 5, 1994.  [RP at 69.]  He explained that he had tried to contract a construction job (at some time) but was unable to make a profit because he was forced, due to his medical condition, to hire all of the labor.  Perini stated that he had worked as an inspector of busses from 1989-1994 and as a salesman (of bread and pastries) from 1981-1989.  [RP at 70-74.]

In a Disability Work Report, dated April 18, 2002, Perini noted that he was an inspector of bus buildings from 1988-1990 and a carpenter contractor from 1990-1994.  [RP at 86.]  At the ALJ hearing, Perini clarified that he misunderstood the question and had not been a carpenter contractor.  [RP at 318.]  During a disability evaluation, Perini indicated that he was a contractor and general builder for about 12 years prior to the auto accident in 1993.  [RP at 236.]

On another disability form, Perini wrote that he was shipping clerk in production from 1966-1976, worked in home extermination from 1976-1977, worked as a sales supervisor and in sales for a baking company from 1977-1981, and as a researcher and inspector form 1981-1992.  [RP at 115.]  On yet another form, Perini stated that he was a self-employed contractor from July 1989 through 2001, and an inspector for Transportation Manufacturing from 1987-1989.  [RP at 121.]

11

During the ALJ hearing, Perini testified that he obtained his contractor's license in 1995/1996 which he kept until 2002, and that he was able to contract a few jobs in 2001. [RP at 321, 335.] He called his business "Red Neck Construction." [RP at 336.] In Perini's wife's affidavit (that was before the Appeals Council), she testified that Perini had worked hard and had never done anything but hard physical labor. [RP at 307.]

In sum, Perini's recitation of his work history is conflicting at times and imprecise, at best.

Perini argues that the determination of past relevant work is critical to this case. The Court agrees since the ALJ's decision of non-disability relies on a finding that Perini's prior relevant work as a bread salesman was not precluded by his RFC.

"In order to be considered past relevant work, the work must have been performed within the past 15 years, it must have lasted long enough for the claimant to learn it, and it must have risen to the level of substantial gainful activity." [Doc. No. 12, p. 5] (*citing* 20 C.F.R. § 404.1565(a)). The ALJ stated that the regulations require the work to have been performed within the last 15 years or 15 years prior to the date that disability must be established. [RP at 18.] Perini last met the disability insured status requirement on December 31, 1997. Thus, according to one form filled out by Perini that states he worked as a bread salesman (for a baking company) from 1981-1989, this work last occurred 8 years before the date that his disability had to be established. [RP at 70.]

Plaintiff points out, however, another disability form in which Perini stated he last worked for the baking company in 1981 rather than 1989. [RP at 115.] It is true that Perini includes varying dates for his different periods of employment. But more importantly, because of Mr. Perini's inexact recitation of his work history, the earning reports in the record conclusively show that Perini last earned more than $200 from the baking company in 1983. [RP at 50.] In 1984, it seems that Perini

12

earned about $240 from the baking company and subsequently worked for another employer that year.  [RP at 50, 51.]  From 1984 through most of 1988, Perini was self-employed according to the earning reports.  [RP at 51.]

Thus, with respect to his bread salesman job, Perini's last significant work activity with the baking company was probably 1983, nineteen years before he filed his DIB application and 14 years plus some months before his disability insured status requirement was last met in 1997.  Technically, the ALJ could have determined that Perini's bread salesman work was past relevant work., i.e., within 15 years of the last date his disability insured status had to have been met.   However, the ALJ did so under the belief that Perini last performed the job in 1989 rather than in 1983, the latter being the more accurate date based on earning records.  The pertinent social security regulations state that:

> [w]e do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply.  The 15-year guide is intended to insure that remote work experience is not currently applied.

20 C.F.R. § 404.1565(a).

Here, the Court concludes that the ALJ committed error in relying on one of Perini's conflicting disability forms for the determination that 1989 was the last year he worked as a bread salesman when the more exact earning records indicate 1983 was the last year Perini performed that job.  Because of this error, the ALJ's finding that bread sales work was past relevant work is unsubstantiated and erroneous.  Moreover, the ALJ's finding is inconsistent with the intent of the pertinent social security regulation, i.e, that remote work experience not be applied as it was here.

13

Therefore, the Court will remand for a rehearing on the issue of whether Perini's RFC would preclude him from performing any properly determined past relevant work. If the ALJ concludes that Perini is unable to perform any past relevant work, then, of course, the ALJ must proceed to step five of the sequential evaluation process.

The ALJ need not re-visit the question of Perini's eligibility date because the Court found the ALJ's determination as to that issue was in accordance with regulations and supported by substantial evidence. *See* discussion *supra*. The Court does not reach Plaintiff's other challenges to the ALJ's determination, e.g., failure to develop the record with sufficient information concerning the demands of past relevant work and credibility findings, as those issues will necessarily be re-analyzed upon remand. However, the Court recommends that the ALJ make proper, detailed findings about the demands of Perini's past relevant work should it be determined his RFC does not prevent him from returning to past relevant work.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Remand for a Rehearing [Doc. No. 11] is GRANTED so that the ALJ can address the issues described herein.

Lorenzo F. Garcia
Chief United States Magistrate Judge

14